MARY E. JOHNSON, Appellant, *v.* JAMES BRASINGTON et al., Respondents.

1. WILL— MEANING OF "HEIRS." The word "heirs," when used in a will or other instrument, is to be understood in its primary or legal sense, unless it appears from other parts of the instrument that it was used in the more restricted sense of children, heirs of the body, or lineal descendants.

2. DEVISE TO "CHILDREN OR HEIRS." In a devise of a remainder to the "children or heirs" of the life tenant. the use of the disjunctive "or" indicates that the testator may have had in mind two classes of persons as devisees, either of which class would take in the absence of the other.

3. CONSTRUCTION AVOIDING PARTIAL INTESTACY. When, in construing a devise of a remainder in fee to the "children or heirs" of the life tenant, being the testator's only child, the meaning to be given to the word "heirs" is doubtful. but the will discloses a clear intention to dispose of the whole estate, and if the word "heirs" is construed in its restricted sense of lineal descendants intestacy will result as to the remainder, whereas it will be avoided by construing the word in its primary or legal sense, the latter construction will prevail, even though it carries a share in the property to relatives of the life tenant on the mother's side, to the exclusion of relatives of the testator's own blood.

*Johnson* v. *Brasington*, 86 Hun, 106, reversed.

(Argued May 11, 1898; decided June 7, 1898.)

APPEAL from a judgment of the late General Term of the Supreme Court in the fifth judicial department, entered June 8, 1895, affirming a judgment in favor of defendants entered upon an order of Special Term sustaining a demurrer and dismissing the complaint upon the ground that it failed to state facts sufficient to constitute a cause of action.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Henry M. Davis* for appellant. The language of the will indicates clearly that the testator intended to devise the whole of his estate, including the remainder in fee, and if it was in any way uncertain as to that intention, the law favors a construction that will prevent partial intestacy to one that will permit it. (*Floyd* v. *Carow*, 88 N. Y. 560, 567; *Wager* v. *Wager*, 96 N. Y. 164; *Riker* v. *Cornwell*, 113 N. Y. 115; *Lamb* v. *Lamb*, 131 N. Y. 227; *Schult* v. *Moll*, 132 N. Y. 122.) The disjunctive " or " separating the two words " children " or " heirs," indicates two classes of persons to have been in the mind of the testator as devisees, and either would take in the absence of the other. (*Adams* v. *East River Sav. Inst.*, 65 Hun, 145, 150.) The construction put upon the will by the learned judge at Special Term is erroneous. (*Wager* v. *Wager*, 96 N. Y. 164, 167, 168; *Montignani* v. *Blade*, 145 N. Y. 111.) The death of the life tenant, Stephen L. Brasington, does not prevent the vesting of the fee in the remainder. (*Wager* v. *Wager*, 96 N. Y. 164; *Bisson* v. *West Shore R. R. Co.*, 143 N. Y. 125; *Goebel* v. *Wolf*, 113 N. Y. 405.) The complaint states a cause of action, as plaintiff and each defendant was an heir of Stephen at his death as well as at the death of the testator, and the only question is as to the extent of the share or portion of each. A question of fact is not a ground of demurrer. (*Matter of Smith*, 131 N. Y. 239.)

*Artemas A. Bradley* for respondents. The appeal to the General Term was not well taken in that it was taken from the judgment only. (Baylies on N. T. & App. 50, and cases cited; *Richards* v. *Brice*, 3 N. Y. Supp. 941, 942; *Webster* v. *Clark*, 51 N. Y. S. R. 808; Code Civ. Pro. §§ 1301, 1316; *Cambridge Valley Nat. Bank* v. *Lynch*, 76 N. Y. 514; *McKeown* v. *Officer*, 127 N. Y. 687–689.) A legal heir will not be disinherited except by an absolute and unquestioned devise, or by necessary implication. (*Chamberlain* v. *Taylor*, 105 N. Y. 193, 194; *Quinn* v. *Hardenbrook*, 54 N. Y. 86; *Wood* v. *Mitcham*, 92 N. Y. 378.) The court must look both to the will and the surrounding circumstances under which the will

was executed in order to ascertain its true construction. (127 N. Y. 173, 174; 125 N. Y. 411.) In examining a will the court is not confined to ascertaining in what sense "heirs" is used elsewhere; but in determining whether the testator used the word "heirs" in its legal, technical and concise sense, the court may and should look to see if in the other parts of the will testator's language is also strictly legal, technical and concise. (*Roome* v. *Phillips*, 24 N. Y. 470; *Matter of Logan*, 131 N. Y. 460, 461.) Testator by his will only intended to provide for his posterity, his lineal descendants. (*Woodward* v. *James*, 115 N. Y. 358, 359; *Scott* v. *Guernsey*, 48 N. Y. 106; 19 N. Y. 348; *Hard* v. *Ashley*, 117 N. Y. 614; *Roome* v. *Phillips*, 24 N. Y. 470; *Drake* v. *Lawrence*, 19 Hun, 112.)

O'BRIEN, J. The question in this case arises upon a demurrer to the complaint in an action brought to partition about fifty acres of land. It is admitted that the land in question was owned in fee by Samuel Brasington at the time of his death on the 27th of February, 1874. He left a will, and the question involves a construction of one of its provisions. The testator left no child or descendant surviving him except a son, Stephen L. Brasington, by a former wife who died in July, 1854. He left a widow, his second wife, Betsey Brasington, who is named in the will as the devisee and legatee of the bulk of the property. She took all the personal estate absolutely, and the real estate, including the lands in controversy, was disposed of by the following clause of the will: "Secondly. All my real estate of every name, nature and kind, wheresoever the same may be, I give and devise to my said wife, Betsey Brasington, for and during the full term of her natural life, to be used and managed by her as she thinks best and for her comfort and to do with all the avails of the same as she pleases. Then, immediately after her death, I give and devise the said real estate to my son, Stephen L. Brasington, to have the use of the same for and during the full term of his natural life. Then, at the decease of my

said son, Stephen L. Brasington, it is to be equally divided among the children or heirs of the said Stephen L. Brasington, in equal shares, share and share alike, and they to have the same forever in fee simple."

There could be little room for dispute concerning the meaning of this clause of the will, but for the fact that Stephen L. Brasington, the son and devisee of the life estate, after the death of the widow, died without children or descendants, or brothers or sisters, or any descendants of brothers or sisters. His death occurred on the 15th of August, 1887, and that of the widow on the 20th of March, 1893.

The plaintiff is one of the heirs at law of Stephen through his mother, the testator's first wife, since she is one of the children of a deceased sister. Some of the defendants belong to the same class, while the other defendants are the heirs at law of Samuel, the testator, that is to say, his brothers and sisters or their descendants, or parties who represent them or some of them. The controversy is between these two classes of heirs. The heirs of Stephen, the son, claim the land in question as heirs under the terms of the will. While the heirs of Samuel contend that the words "children" and "heirs" in the will are synonymous words, referring to the heirs of the body of Stephen, and that since he died without children, or heirs of the body, the remainder limited upon his life estate failed, and the testator died intestate as to such remainder. The latter class of heirs are the brothers and sisters of Samuel, or their descendants, or persons who represent them or some of them in blood or estate. Seven of these parties demurred to the complaint on the ground that it did not state facts sufficient to constitute a cause of action, and the courts below have sustained the demurrer.

The complaint sets forth the will in full; states all the facts with respect to the death of the parties, and alleges the relationship of each party to Samuel and to Stephen, as the case may be, and all other facts necessary to present the question of law arising upon the will. That question is, whether upon the death of Stephen without children or heirs of the body, the

remainder limited upon his life, vested in his heirs generally, or in the collateral heirs of Samuel, upon the supposition that he died intestate as to such remainder.

The gift over was to the "children or heirs" of Stephen, and the inquiry is whether the word "heirs" is to be understood in its primary and legal sense as referring to the persons who would take or inherit from him upon his death, or in a restricted sense, as meaning heirs of the body, issue or lineal descendants. There is nothing in the other parts of the will that throws any light upon the meaning which the testator intended should be given to the word heirs. We know from the complaint that at the time of the death of the testator Stephen was thirty-six years of age, without children and that he never married.

The word heirs, when used in a will or other instrument, is to be understood in its primary or legal sense, unless it appears from other parts of the instrument that it was used in the more restricted sense of children, heirs of the body or descendants. In this case, while it is true that we must seek for and follow the intention of the testator, it is quite possible that the difficulty which has arisen concerning the meaning of his will was not present in his mind at all. When we speak in such cases of the intention of the testator we do not always refer to some intention or purpose that he actually had in mind. We mean that when he has expressed himself in ambiguous or doubtful language that the law will impute to his words such a meaning as, under all the circumstances, will conform to his probable intention and be most agreeable to reason and justice.

It is useless to speculate with reference to the thought that was in the testator's mind when he made the will. The instrument contains nothing to show whether he supposed that Stephen would leave children surviving him, or die childless as he actually did. What is quite certain, however, is that the testator in disposing of the remainder, limited upon the life of his son, used words in such a way as to clearly meet either contingency. If he happened to have issue, then the word "children" was sufficient. If he did not, then the more compre-

24

hensive word "heirs," in the alternative, covered the case. Moreover, it is quite clear from the language used that the testator intended to dispose of his land in fee, and not to die intestate with respect to any part of his property. The defendants' construction imputes to him a contrary intention, and this I think is the fatal weakness of the argument in support of their contention. That the testator, when carving out a life estate to his widow, and another life estate to his son, intended to leave the remainder undisposed of in the event of the son's death without children, is altogether improbable. What the learned counsel for the defendants evidently means is, that the law will impute to him such an intention, since the remainder was to the heirs of the body of Stephen, and he died without such heirs, and thus the devise over failed. But this involves the conclusion that the word "children" and the word "heirs" were used by the testator to express the same idea, meaning Stephen's issue or descendants. Certainly that proposition is not necessarily correct. These two words connected by a disjunctive are broad enough to include the heirs at law of Stephen through his mother. Indeed, that is the primary and natural meaning of the words as they appear in the will.

The defendants invoke a recognized rule of construction to give to them the more restricted meaning, and that is that the testator could not have intended by the will that, in the event of the death of his son without children, the land should pass to the relatives of his first wife to the exclusion of the relatives of his own blood. There is nothing in the case or in the language of the will to show that this consideration had any influence on the mind of the testator, and the strong presumption against intestacy and the words of the will outweigh all arguments based upon this rule.

The use of the disjunctive "or," separating the two words "children" and "heirs," indicates that the testator may have had in mind two classes of persons as devisees of the remainder, either of which class would take in the absence of the other.

If this conclusion could be said to be doubtful, then the clear intention of the testator to devise the whole estate, including the remainder in fee, must control, since the law always favors a construction that will prevent partial intestacy to one that will permit it. (*Floyd* v. *Carow*, 88 N. Y. 560–567; *Wager* v. *Wager*, 96 N. Y. 164; *Riker* v. *Cornwell*, 113 N. Y. 115; *Lamb* v. *Lamb*, 131 N. Y. 227; *Schult* v. *Moll*, 132 N. Y. 122.) We think that the word "heirs" in the will should be understood in its primary or legal sense, and not in the restricted sense of issue, descendants or heirs of the body.

The judgment of the court below sustaining the demurrer should be reversed, with costs in all the courts, and the demurrer overruled, with leave to the defendants to answer within twenty days, on payment of costs.

All concur.

Judgment reversed, etc.