## Piperberg Estate (No. 2)

*William W. Wogan,* for exceptants.

*Judson M. Ruch, Luria & Still,* by *Charles H. Still,* and *Raymond R. Smith,* contra.

SHEELY, P. J. (specially presiding), September 23, 1953.—Exceptions to the adjudication and schedule of distribution in this estate * have been filed by the Western National Bank of York, York, Pa., guardian of the estate of Civia Piperberg, also known as Celia Piperberg, also known as Cecelia Piperberg, and by the York Trust Company, of York, Pa., David M. Piperberg and William Piperberg, executors under the last will of Jonas Piperberg, deceased. The exceptions raise two questions: (1) Whether the court of common pleas has jurisdiction to interpret the will of the testator and to direct distribution of the estate, and (2) whether the orphans' court properly interpreted the will of the testator. The first question was not pressed at the argument on the exceptions and nothing need be added to what was said in the original adjudication.

The second question involves the proper interpretation of item four of the will of Jonas Piperberg wherein the testator gave all of his residuary estate to the York Trust Company and David M. Piperberg in trust.

---

* Piperberg Estate, 87 D. & C. 26.

Under subsection (b), the trustees were directed to operate any and all of the testator's real estate "during the existence of the hereinafter created life estate for the benefit of my wife". Under subsection (c), the trustees were directed "To pay from the income and/or principal of my estate, if necessary, the cost of the maintenance and support of my wife, Cevia Piperberg, so long as she remains a patient in the Harrisburg State Hospital". Under subsection (d) the trustees were directed to convert the entire estate into cash upon the death of testator's wife, and to divide the remainder thereof as therein directed.

The exceptants contend that under these provisions of the will, the widow was entitled to a full life estate, with the right to receive all of the income of the trust estate and with the right to have such income paid to the Western National Bank of York, guardian of the estate of Cevia Piperberg, a person of weak mind, appointed by the Court of Common Pleas of York County. The auditing judge held that under the will the widow was entitled to nothing more than the payment of the cost of her maintenance and support so long as she remains a patient in the Harrisburg State Hospital.

The only new argument advanced in support of the exceptions is that on August 7, 1951, in a proceeding relating to the sale of the real estate of decedent, Hon. Harvey A. Gross, president judge of this court, filed an opinion in which he said:

"Judge Sherwood, we think properly held that the widow's interest in this estate is a life estate, meaning of course an equitable life estate for it could be no other under the terms of Item four of the will and to which we may add that she has the power of consumption of the whole principal of the trust if it becomes necessary to support and maintain her while a patient in the Hospital from which Judge Sherwood held there is no likelihood of her ever being discharged.

"Undoubtedly to care for his widow was the first object of testator's bounty. The will makes that perfectly clear. But on the other hand we see nothing in the will to indicate that he was interested in building up a private estate for her for the purpose of enabling her heirs or next of kin to become the ultimate beneficiaries thereof. The second objects of his bounty were his own blood relations, his children, and this is also clearly indicated by his will."

It is contended that this statement of Judge Gross is at variance with the adjudication of this court and that it supports the contention of the guardian of the estate of the widow. A careful reading of the excerpt shows that it is in full accord with the conclusions reached by the auditing judge. The primary purpose of testator was to provide for his wife who was a patient at the Harrisburg State Hospital from which, as Judge Sherwood said, there was no likelihood of her ever being discharged. He desired to take care of all of her needs but did not desire to build up a private estate for her for the purpose of enabling her heirs or next of kin to become the ultimate beneficiaries thereof. Had he created a legal life estate or had he provided that his widow was to receive all of the income from the trust estate, the excess over and above the cost of her maintenance and support would have accumulated into a private estate for the benefit of her heirs or next of kin. He therefore did not direct that the income should be paid to her, but he gave her an equitable life estate and directed his trustees to pay the cost of her maintenance and support. He limited the life estate with the provision that the payments were to be made "so long as she remains a patient in the Harrisburg State Hospital" with the thought in mind that she would never be discharged therefrom and for the purpose of preventing her removal to a more expensive institution or to the home of a relative

who might make exorbitant charges for her care. He also made certain that there would be sufficient funds to provide for her maintenance and support by authorizing the trustees to use the principal of the estate if the income proved insufficient. The statement of Judge Gross and the opinion of the auditing judge are in entire accord.

Adopting the rule of construction suggested by the exceptants that the court will, in determining the testator's intention, place itself as nearly as possible in his position and take into consideration the situation of testator, the facts and circumstances surrounding him at the time the will was executed and his relationship to the beneficiaries and their condition of necessities (Shober Estate, 364 Pa. 321 (1950); Jackson's Estate, 337 Pa. 561 (1940)), we are convinced that this is the proper interpretation of the will. Testator desired to make ample provision for his incompetent wife with that portion of his estate not required for that purpose to go to his children.

The rest of the argument on behalf of exceptants is a repetition of the arguments previously advanced. Much is made of the argument that testator must have intended more than the payment of his wife's bills at the Harrisburg State Hospital. We think testator did provide for more than the mere payment of the hospital bills. He provided for payment of the cost of her "maintenance and support" which would include the cost of all services, etc., necessary for her maintenance and support. The reference to the Harrisburg State Hospital was merely a limitation upon the conditions under which such payments were to be made.

Exceptants rely upon Minnich v. Peoples Trust, Savings and Deposit Company, 29 Pa. Superior Ct. 334 (1905), for the proposition that where there is a "support trust" for the benefit of certain beneficiaries under incapacities, such beneficiaries are entitled to

all of the income regardless of their need of support and maintenance. In the cited case, the mother of a lunatic bequeathed one half of her estate in trust, the income to be used for the comfortable maintenance and support of her daughter. The lunatic daughter had an estate from her father the income of which was sufficient for her support. Upon a case stated to determine the right to the income derived from the estate of the mother, the court held that the whole of the income could be used for the maintenance of the daughter without regard to her individual estate. In Miskey's Estate, 209 Pa. 474 (1904), also cited by exceptants, the settlor in a deed of trust directed his wife, as trustee, to use the net income of the estate for the maintenance and support of herself and of two children. One of the children left home and demanded one third of the income. It was held that the widow had the right to use the whole income at her discretion for the support of herself and children and that the child who left the home had no standing to demand a portion of the income. Neither of these cases is controlling in the present situation.

In the present case, the income was not given to the beneficiary, and it was not directed that the income should be used for her maintenance and support. The trustees have the undoubted right to use all the income for that purpose and to draw upon the principal if the income is insufficient, but the direction to the trustee is limited to the payment of the cost of her maintenance and support from the income and from the principal, if necessary. There is no gift of the income to the beneficiary.

It is further to be noted that testator directed the trustees to pay the cost of the maintenance and support. This was the duty specifically imposed upon them and it contemplated the exercise of discretion by them in determining what maintenance and support

was necessary, the amount to be expended therefor and whether it was necessary to use any portion of the principal for that purpose. It was not contemplated that the income should be paid to a guardian to be appointed for her estate to be expended by such guardian at its discretion or under directions of the court of common pleas. Testator set up a complete plan for the operation of the trust estate and for the care of his wife.

We conclude that the exceptions to the adjudication and the schedule of distribution must be dismissed.

And now, September 23, 1953, the exceptions to the adjudication and decree of distribution in the above estate are dismissed, the adjudication and decree of distribution are confirmed absolutely, and the executors are directed to make distribution in accordance therewith. An exception to this decree is noted on behalf of exceptants.